Horst, Appellant, *v.* Shearburn.

Argued May 1, 1967. Before BELL, C. J., JONES, EAGEN, O'BRIEN and ROBERTS, JJ.

*Norman Shigon,* for appellant.

*Francis E. Shields,* with him *William J. O'Brien,* and *Pepper, Hamilton & Scheetz,* for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, September 26, 1967:

The jury returned a verdict for the defendant after a seven-day trial in a malpractice case. The lower Court denied a motion for a new trial. From the judgment entered on the verdict, plaintiff took this appeal.

For three days plaintiff had an uncontrolled frightful bleeding of the nose and was in a very, very criti-

cal condition. His two able doctors, unable to stop or control this terrible bleeding, called in the defendant for an emergency operation, which was imperative in order to save plaintiff's life. The operation had to be performed within ten hours or plaintiff would have died. During this emergency operation plaintiff had to be given fifteen pints of blood.

Seventeen errors are alleged by plaintiff. It would take more than half a dozen pages to merely state the medical testimony pro and con. We shall therefore briefly summarize it and the pertinent facts. Plaintiff during the operation became partially paralyzed. The real and basic issue in the case is this: Did defendant ligate, as he and his witnesses testified, the *external* carotid artery, or did he ligate (as plaintiff's witnesses testified) the *internal* carotid artery? All the witnesses agreed that it would have constituted malpractice to have ligated the *internal* carotid artery.

The testimony of the defendant, an American board certified surgeon, was supported by another eminent American board certified surgeon, Dr. Brooke Roberts, and by plaintiff's family doctor, Dr. Rendall R. Strawbridge, as well as by defendant's additional doctor, Dr. Louis E. Silcox, a board certified nose, ear and throat specialist, who was the otolaryngologist and chief of staff of that service at the Lankenau Hospital and who had treated plaintiff during the three days prior to the operation.

Plaintiff had three medical witnesses. The trial Judge properly held that one of these witnesses—Dr. Cyril Wecht—was not an expert in this field and his opinion was inadmissible.

Plaintiff's next witness, Dr. Michaels, testified that defendant had ligated plaintiff's *internal* carotid artery, and that this was the cause of plaintiff's semi-paralyzed condition. However, Dr. Michaels admitted that there were various medical conditions which could

account for plaintiff's partially paralyzed condition, other than the ligature of the *internal* carotid artery. For example, Dr. Michaels admitted that an aneurysm, or a shock, or muscle spasm, or arteriosclerosis, or malformations of the arteriovenous system, or any or all of them, could have caused and were possible explanations for plaintiff's condition.

A New York physician, Dr. Leon Friedman, testified that defendant ligated the *internal* carotid artery and this caused plaintiff's semi-paralyzed condition. Moreover, he disagreed with virtually everything that defendant's experts testified to.

If there ever was a case for the jury, this case—because of the conflicting evidence and the question of the credibility of the witnesses—was it! To recite at tremendous length the detailed medical testimony which no lawyer except the attorneys for the parties herein would be interested in, seems (we repeat) unnecessary and unwise. We have studied the entire record and have carefully considered all of plaintiff's contentions, including the charge of the Court, which under all the testimony was necessarily difficult, and we are convinced that there was no abuse of discretion or reversible error of law.

Judgment affirmed.

Mr. Justice MUSMANNO and Mr. Justice COHEN took no part in the consideration or decision of this case.